Michael Catalano, J.
The plaintiffs seek a declaratory judgment pursuant to section 473 of the Civil Practice Act, declaring *451 rights and other legal relations between the parties to the effect that the plaintiff Carmen Musso’s automobile involved in an accident on September 9, 1955, was covered by an insurance policy No. N-624649, issued by the defendant February 3, 1955; that the defendant be directed to pay any recovery obtained in an action pending in this court against the plaintiffs accordingly; and that the defendant be directed to defend the plaintiffs in said action and pay certain counsel fees and expenses.
It is admitted by the pleadings that the defendant, as a duly authorized insurance company doing business in this State, on February 3,1955 contracted with plaintiff Carmen Musso, for a period of one year to February 3, 1956, to pay on his behalf certain sums of money found due and payable by reason of accident involving his automobile; that this contract was contained in a policy of automobile insurance issued by the defendant, No. N-624649, covering a 1948 Ford sedan automobile, model 8HA, motor number 8HA9162; that on September 9, 1955 Carmen Musso, while operating a 1951 Ford at Town Line Road and Upper Mountain Road, Niagara County, New York, collided with an automobile owned and operated by one Edward H. Smith; that immediately after the service of the summons and complaint in the Smith action, the plaintiffs requested the defendant to defend the same, but it refused.
The defendant also admits pursuant to section 322 of the Civil Practice Act that at the time of the issuance of said policy it was countersigned by its duly licensed resident agent, J. R. McCabe; that at said time, the policy had written on the outside thereof, opposite the printed word “Agent” the words, “ Sidney A. Warne ”; that in the regular course of defendant’s business, its automobile liability insurance policies were delivered to assureds with designated agents thereon, and such policies were returned to it with designated agents thereon, including policies issued under the New York State Assigned Risk Plan; that said 1948 Ford was named in said policy issued by the defendant.
At the trial of the issues, before the court without a jury, the defendant’s primary case consisted of the testimony of its manager of the underwriting division, one Joseph R. McCabe, who “ countersigned ” the policy in question at Syracuse, New York, on February 5, 1955 as “Licensed Resident Agent”, effective February 3, 1955. The essence of his testimony was that although Sidney A. Warne was not the defendant’s agent, nevertheless he was named in said policy as “ agent ”, which is printed on all defendant’s policies, whether or not the policy be *452 issued to an assigned risk applicant, that when said policy left defendant’s Syracuse office it contained the name of Sidney A. Warne as “ agent ’’who could receive notices of accidents, notice of change of cars or any other notices in the case of assigned risks covered by the defendant; that nothing is on defendant’s policy to inform an insured that Sidney A. Warne was not defendant’s “ agent ”, or to warn the insured that he cannot treat him as defendant’s “ agent ”,
The chronology of events in this case is enlightening. Stanley Mitchell, a licensed subagent for Warne, had known plaintiff, Frank Musso, for many years and plaintiff, Carmen Musso (Frank’s son) for a couple of years before February 3, 1955. Mitchell had done accounting work for Frank; the insurance business was a side-line. In January, 1955, Mitchell sold Frank some insurance that was issued by a company other than this defendant, through Warne’s office. Shortly after that, Mitchell tried to obtain insurance for Carmen, through Warne, from the same company, but it was denied. Thereupon Mitchell prepared an application for Carmen in the assigned risk plan of this State, through Warne, who received the policy in question from the defendant and delivered it to Mitchell, who mailed it to Carmen. This policy covered a 1948 Ford that was registered in the name of Frank, who had given it to his son Carmen in 1954. Carmen paid the insurance premium to Mitchell, who shared the commissions with Warne; the policy had been sent to Carmen through the mail in an envelope sent by Mitchell. On March 21, 1955, Frank transferred the ownership of the 1948 Ford to Carmen, but did not change the registration from his name to Carmen’s because Mitchell had advised them to leave it in Frank’s name. In April, 1955, Carmen purchased a 1951 Ford after giving Mitchell full particulars. Pursuant to instructions from Mitchell, Carmen took the new car home where he removed the license plates (then in Frank’s name) from the 1948 Ford and placed them on the 1951 Ford. Carmen believed Mr. Mitchell had taken care of all details to effect this change of automobiles. At the time the 1951 Ford was purchased, Frank asked Mitchell if it would be possible to transfer this car into Carmen’s name for registration purposes. Frank testified without contradiction: “ He (Mitchell) said no, leave it as it is. I (Frank) asked him if the insurance Avas transferred to the 1951 Ford, because I wanted to transfer the plates onto it, and he said he would take care of it, that it AA as all right.” Thereafter, the 1948 Ford was laid up because it Avas in disrepair and could not run; then, finally, it was sold in August, 1955 to a junk dealer.
*453 A climax of events came on September 9, 1955, when Carmen Musso had an accident while operating the 1951 Ford, in Niagara County, New York, resulting in the death of Edward Smith and injury to his wife, Ethel Smith. On that same date, Carmen reported the accident to Mitchell who took him over to Warne, who told Carmen that the 1951 Ford was not insured and, therefore, Carmen was not covered by his insurance policy that had been issued by the defendant.
The insurance policy issued to Carmen, effective February 3, 1955 to February 3, 1956, covers the 1948 Ford, by description, and also, the following: “Temporary Substitute Automobile * * * an automobile not owned by the named insured while temporarily used as the substitute for the described automobile while withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction: ” “ Newly Acquired Automobile— an automobile, ownership of which is acquired by the named insured who is the owner of the described automobile, if the named insured notifies the company within thirty days following the date of its delivery to him, and if either it replaces an automobile described in this policy or the company insures all automobiles owned by the named insured at such delivery date ”, and “ Use of other Automobiles. If the named insured is an individual who owns the automobile * * * such insurance as is afforded by this policy * * * applies with respect to any other automobile ”, and in such instance “ the unqualified word ‘ insured ’ includes (1) such named insured ”.
Here, the 1951 Ford was a ‘ ‘ newly acquired automobile ’ ’ and also meets the test of a “ temporary substitute automobile ” within the meaning of this policy. At no time did this policy cover Carmen Musso for more than one automobile. The policy was primarily designed to protect the named insured, provided he did not unduly increase the risk assumed by the defendant.
The 1951 Ford involved in the accident was three years newer and apparently safer than the 1948 Ford named in the policy; thus, the risk was decreased accordingly. It follows that Carmen Musso, as named insured, is entitled to all of the benefits of his insurance contract with the defendant.
The term ‘ ‘ agent ’ ’ includes any one who in any manner aids the insurer in transacting the business, and the extent of his authority is a question of fact to be determined by the circumstances of each case. (Bornas v. Standard Acc. Ins. Co., 5 AD 2d 96, 100. See, also, Smith Lbr. Co. v. Colonial Assur. Co., 172 App. Div. 149, 151.)
Here, the policy was prepared and executed by the defendant with the name of “ Sidney A. "Warne ” as “ Agent ” on the face *454 of it. This, together with the other evidence in the case, constituted an admission by defendant that Warne was its agent.
A repudiation of liability by an insurer, through its agent, excuses the insured from further performance on his part of the conditions of the policy. (Bornas v. Standard Acc. Ins. Co., 5 A D 2d 96, 102, supra.)
In this case, notice of the accident given to Warne was in fact notice to the defendant, and the defendant’s denial of any liability, upon the ground that the 1951 Ford was not described in the policy, relieved the insured from the duty of further action.
It is common knowledge that insurance business is carried on by agents largely through subordinates and subagents; that, accordingly, the agent has implied authority to appoint subordinates and subagents whose statements, acts, knowledge or receipt of notice, within the ordinary course of business will bind the insurer. (Barone v. Ætna Life Ins. Co., 260 N. Y. 410, 415-416.) No elaborate analysis or refinement of the agent’s actual powers or the actual or apparent powers of the clerk in his office should be permitted to defeat the liability of the company. (Barone v. Ætna Life Ins. Co., supra, p. 416. See, also, Bodine v. Exchange Fire Ins. Co., 51 N. Y. 117, 123.)
Here, on the face of the policy where “ Sidney A. Warne ” appears as ‘ ‘ Agent ” is a large sticker containing the printed name of 1 ‘ Stanley Mitchell ” — “ Accounting, Insurance and Tax Service.” Mitchell worked through Warne’s office on all matters involving insurance. Warne and Mitchell divided the commissions paid out of premiums that had been paid by Carmen, the named insured, to Mitchell. Carmen relied upon the relationship of the defendant, as insurer, Warne, as agent of the defendant, and Mitchell, as subagent of Warne. All of their actions justified this reliance.
Where an automobile liability policy indemnifies the insured against liability imposed by reason of the ownership, maintenance or use of the automobile, title to the automobile, legal or equitable, is not necesary; legal possession or responsibility for its use is enough. (Pauli v. St. Paul Mercury Ind. Co., 167 Misc. 417, 424, affd. 255 App. Div. 935, motion for leave to appeal denied 280 N. Y. 853. See, also, Abrams v. Maryland Gas. Co., 300 N. Y. 80, 85.) Registration of title in the name of another is only prima facie proof of ownership and may be rebutted. (Zeller v. Preferred Mut. Fire Ins. Co., 9 Misc 2d 855, 858.)
Here, Carmen, the insured, was equitable owner of the 1948 Ford and the 1951 Ford; his possession of both was legal, *455 although they were registered in Frank’s name. Frank’s prima facie ownership was amply rebutted.
The public policy of this State prohibits a former owner from denying ownership of the vehicle bearing his registration plates at the time of an accident in violation of section 61 of the Vehicle and Traffic Law, but only when he is sued in tort by an injured person as the owner of such vehicle. (Phoenix Ins. Co. v. Guthiel, 2 N Y 2d 584, 587-588. See cases cited.) Nevertheless, where the controversy presents the interpretation of a contract executed between the insured and the insurer, the public policy rule does not apply. (Phoenix Ins. Co. v. Guthiel, supra, p. 588. See, also, Switzer v. Merchants Mut. Gas. Co., 2 N Y 2d 575.)
In this case, the insured, Carmen, sues the insurer, defendant, to declare his rights based upon their insurance contract; no theory of tort is presented whatsoever. Carmen’s action is not barred by public policy.
It follows that the plaintiff, Carmen Musso, is entitled to judgment declaring: that plaintiff, Carmen Musso’s 1951 Ford automobile involved in the said accident of September 9, 1955 was covered by the insurance policy, No. N-624649, issued by the defendant February 3, 1955; that the defendant shall pay on behalf of Carmen Musso, the insured, all sums which he shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at anytime resulting therefrom, and property damage, caused by the said accident up to the limits of said policy; that the defendant shall defend Carmen Musso in any suit brought against him alleging such injury, sickness, disease, death or destruction and seeking damages on account thereof; that the defendant shall pay to Carmen Musso $372, as attorneys’ fees, and $89.55 as disbursements, reasonably expended by him in defending said action instituted by Ethel G. Smith against him.
The action by Frank Musso herein is groundless.
Accordingly, plaintiff, Carmen Musso, is entitled to judgment against the defendant declaring his rights as stated herein, together with costs; and the defendant is entitled to judgment dismissing the complaint as to the plaintiff, Frank Musso, only, upon the merits with costs as to him, only.
This is the decision of this court upon which judgment may be entered. (Civ. Prac. Act, § 440.)
Let judgment be entered accordingly.