A. David Benjamin, J.
This is an action for a declaratory judgment seeking to adjudicate the rights of the parties hereto with respect to a policy of automobile liability insurance issued by the defendants to plaintiff Ignatz Tyrnauer (hereinafter called Ignatz).
On July 8, 1955 Ignatz, a teacher at a Yeshiva in Brooklyn, New York, and at a Summer camp operated by the Yeshiva in Ulster County, New York, purchased a 1953 Chevrolet station wagon and registered it in his name. He covered it under an automobile liability insurance policy issued by the defendants to him for a period of one year. In the policy declarations it was stated that Ignatz was the sole owner of the automobile. Ignatz paid the premiums for the policy and paid as well for all gasoline used and repairs made on the automobile. The car was used by Ignatz for his own personal needs and convenience.
On January 19, 1956, Ignatz, with the intention of donating the car, transferred the registered ownership to the Summer camp, without notifying either his broker or the defendant insurers of the change of registration. However, he continued to use the automobile, bore the cost of operation and retained actual possession of it at all times thereafter. The vehicle was never under the direction of the camp officials for camp uses or purposes.
On July 8,1956 a renewal policy was issued to Ignatz as owner and again he failed to advise his brokers or the insurers of the transfer of the registered ownership of the car. It is this policy which is the subject of the action. Thereafter and on or about August 3, 1956 Ignatz loaned the automobile to his brother David for a week end. David took it to the Summer camp and then on August 6, 1956, while driving the car to Ellenville, New York, with six guests in it, was involved in an accident.
On that same day Ignatz’ insurance broker was notified of the accident, that the car had been driven by David and also for the first time was advised that its registered ownership had been transferred by Ignatz to the camp in January of 1956. At the same time Ignatz voluntarily paid to the broker the first installment of premium due on the renewal policy.
On August 8, 1956 the insurance broker notified the defendants of the accident and also of the transfer of the ownership *118 of the car. The broker was thereafter advised that the policy, because of the transfer of ownership, would be cancelled. On August 10, 1956 the defendants mailed to Ignatz a notice of cancellation of the policy effective on August 22,1956 and thereafter on September 7, 1956 requested that the broker arrange for the collection and remittance of an earned premium for the period between the inception date of the renewal policy and the date of its cancellation. The broker sent to the defendants the amount of premium requested.
Thereafter actions arising out of the accident of August 6, 1956 were brought. The defendants in this action have refused to undertake the defense of those actions and the plaintiffs in those actions, by stipulation, have appeared in this case and agreed to be bound by the adjudication made herein.
Under the insuring agreements in the policy here in question the defendants agreed “ to pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, caused by accident, and arising out of the ownership, maintenance or use of the automobile.” Plaintiffs herein contend that since Ignatz continuously maintained, used and possessed the motor vehicle these defendants are liable under the policy issued to Ignatz, even though the registration for the car was in the camp name, and cite in support of their position Abrams v. Maryland Cas. Co. (300 N. Y. 80).
In that action the insured (Linden Milk) transferred title to a truck owned by it to its employee Cohen, without notifying its liability policy insurer of the transfer so made. The truck was used by Cohen to deliver Linden’s milk products precisely as he had done when Linden was its registered owner. An accident occurred involving the truck after its transfer to Cohen and during the life of the liability insurance policy issued to Linden. The Court of Appeals there held that since Linden continued to have the truck used in its business, it retained an interest that was insured under the liability policy, that the interest insured was more than ownership and covered an accident in which the vehicle was operated in such a way as to render the insured responsible, even after Linden Milk had parted with legal title; that Linden was covered under the ownership, maintenance and use provision of its liability policy.
However, in the instant action the testimony shows that David, the operator of this vehicle at the time of the accident, Avas driving the car for his OAvn purposes and pleasure and not for any use or purpose that could be connected with Ignatz. *119 Likewise Ignatz too used the car solely for his own pleasure and convenience and never used it on business for the camp, the record owner of the car. No policy of liability insurance was ever issued to the camp. There is therefore no analogy to the Abrams case.
Ignatz having parted with ownership of the automobile was no longer subject to liability under section 59 [now § 388] of the Vehicle and Traffic Law. His sole liability for its negligent operation would arise only if the negligence was his own or the act of his servant, agent or employee in the performance of Ignatz’ business.
Then too the renewal policy upon which this action is based was an entirely new contract and could not be consummated without the mutual consent of the parties thereto. (Paccione v. Home Ind. Co. of N. Y., 244 App. Div. 339, affd. 273 N. Y. 643; 13 Appleman, Insurance Law and Practice, § 7641.) In the renewal policy Ignatz declared that he was the sole owner of the automobile, admittedly untrue, title having been transferred to the Summer camp during the life of the prior policy.
Under Condition 29 of the policy of insurance now in dispute, such declaration by Ignatz was deemed a representation, and in reliance upon the truth of the representations so made the defendants issued this policy, a policy which defendants would not have issued to Ignatz had they known that the car was owned by the camp. This representation was material and vital to the issuance of the policy, and since it was false, was such as entitled the insurers to avoid. In Mapu v. Agricultural Ins. Co. (244 App. Div. 268, 269), a similar provision for avoidance was upheld. The court there said: ‘ ‘ An insurer is entitled to know who has the title to, or an interest in, property proposed for insurance, to the end that it may determine whether or not to enter into or continue a contract of insurance. Here it was willing to contract with the plaintiff as owner, but it does not follow that it would have been willing so to do with the new owner. This element is material to the risk. # * * (Savage v. Howard Ins. Co., 52 N. Y. 502; Perry v. Lorillard Fire Ins. Co., 61 N. Y. 214.) ” And likewise in O’Connor Transp. Co. v. Glens Falls Ins. Co. (198 App. Div. 136, affd. 233 N. Y. 659) and Rakov v. Bankers Life Ins. Co. of City of N. Y. (176 App. Div. 918) it was held that where material representations are substantially untrue insurers may void the policies.
Accordingly these defendants have no obligation under the policy in suit unless they have either waived their rights or are estopped to raise them. Plaintiffs claim that the actions of the defendants in sending to Ignatz the notice of cancellation, effective at a future date, and the demand and acceptance by *120 them of an earned premium from a date preceding the accident to the date when the policy was terminated, in accordance with the terms of the cancellation notice, constituted such a waiver or estoppel.
A waiver is ‘ ‘ voluntary and intentional relinquishment or abandonment of a known and existing legal right, advantage, benefit, claim, or privilege, which except for such waiver the party would have enjoyed ” (Davison v. Klaess, 280 N. Y. 252, 261), and an estoppel arises from a person’s act or declaration to another who rightfully relying thereon changes his position to his detriment (Metropolitan Life Ins. Co. v. Childs Co., 230 N. Y. 285). Here notice of cancellation was given to Ignatz as soon as defendants became aware of Ignatz’ material misrepresentation as to ownership. It did not mislead the assured and was made to protect defendants’ legal rights. Likewise Ignatz voluntarily paid the premium due prior to the notice of cancellation for a period extending beyond the date of cancellation, and such payment was made before defendants had knowledge of Ignatz’ misrepresentation and before any action was taken by them to protect themselves therefrom. The request by defendants for the earned premium was routine and administrative.
Thus it is clear that defendants never abandoned or waived their legal rights and in fact at all times stood upon and asserted them. Nor did the retention by these defendants of the earned premium, voluntarily paid by Ignatz prior to the routine request therefor by defendants, constitute a waiver or estoppel. Ignatz’ posture was not in any way changed thereby. ‘1 Where the company after a loss first obtains knowledge of a breach of a condition precedent, which prevents the risk of the policy from attaching, a waiver or an estoppel cannot be predicated upon its retention of premium.” (32 C. J., Insurance, p. 1352; 45 O. J. S., Insurance, §§ 716, 717; 16 Appleman, Insurance Law and Practice, p. 929.)
Upon consideration of all the evidence and the testimony herein, I find in favor of the defendants and against the plaintiffs and direct that judgment be entered dismissing the complaint upon the merits.
This constitutes the decision of the court pursuant to section 440 of the Civil Practice Act. Settle judgment on notice.